# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 7, 2023           Decided May 16, 2023

No. 22-3011

UNITED STATES OF AMERICA,
APPELLANT

v.

PAUL MICHAEL GUERTIN,
APPELLEE

———

Consolidated with 22-3013

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:21-cr-00262-1)

———

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellant/cross-appellee. With him on the briefs were *Chrisellen R. Kolb*, *Elizabeth H. Danello*, and *Christopher B. Brown*, Assistant U.S. Attorneys.

*Matthew J. Peed*, appointed by the court, argued the cause and filed the briefs for appellee/cross-appellant.

2

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  On March 29, 2021, a grand jury charged Paul Michael Guertin with wire fraud, in violation of 18 U.S.C. § 1343, and obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Guertin moved to dismiss the indictment for failure to state an offense. The District Court granted the motion, *United States v. Guertin*, 581 F. Supp. 3d 90, 100-01 (2022), and the Government appealed to contest the dismissal of the section 1343 (wire fraud) count. The Government does not appeal the dismissal of the section 1512(c)(2) (obstructing an official proceeding) count.

Guertin is a former Foreign Service Officer in the Department of State. During his ten-year tenure, he adjudicated Chinese visa applications to the United States. The indictment charges that Guertin violated section 1343 when, during routine security clearance renewals, he failed to disclose "a sexual relationship with a foreign national whose visa application he had adjudicated; certain financial problems arising out of gambling activity; and an undisclosed loan agreement with two Chinese nationals collateralized by Guertin's home." *Guertin*, 581 F. Supp. 3d at 91. The Government argues that the basis for the indictment under section 1343 was that "Guertin committed actionable fraud when he lied in order to get the renewed security clearance necessary for his job." Appellant's Br. 12. Therefore, according to the Government, the District Court erred when it dismissed the indictment for failure to state a violation of the wire fraud statute. We disagree. The District Court correctly found that the

indictment in this case does not state an offense under section 1343. *Guertin*, 581 F. Supp. 3d at 92.

"The federal wire fraud statute makes it a crime to effect (with the use of the wires) 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.' 18 U.S.C. § 1343." *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020). "Construing that disjunctive language as a unitary whole, [the] Court has held that 'the money-or-property requirement of the latter phrase' also limits the former." *Id*. (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)). The Court has also made it clear that the wire fraud statute criminalizes *only* "schemes to deprive [the victim of] money or property." *Id*. In other words, section 1343 does not criminalize schemes that merely deprive the victim of the perpetrator's honest services. Indeed, the Supreme Court has specifically rejected the suggestion that the wire fraud statutes encompass "undisclosed self-dealing," even in situations when an offending employee hides personal financial interests. *Id*. at 1571-72 (citing *Skilling v. United States*, 561 U.S. 358, 409 (2010)). As explained below, because the indictment here fails to allege that Guertin perpetuated a scheme to deprive the State Department of anything more than his honest services, it cannot sustain the wire fraud count.

Before the District Court, Guertin moved to suppress certain evidence obtained pursuant to a search warrant issued in this case and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Because we affirm the District Court's dismissal of the indictment of the section 1343 (wire fraud) count, Guertin is the prevailing party on the merits. We therefore dismiss his cross-appeal of the District Court's denial of his motion to suppress and request for a *Franks* hearing.

## I.    BACKGROUND

### A.  Factual Background

As noted above, the grand jury charged Guertin with wire fraud, in violation of 18 U.S.C. § 1343, and with obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). The indictment states that between 2007 and 2017, Guertin was employed as a Foreign Service Officer with the United States Department of State ("State Department") and served on multiple assignments abroad, including a posting in Shanghai, China. While in Shanghai, Guertin acted as a consular officer and adjudicated applications for United States visas.

The indictment also alleges that, as a condition of his employment, Guertin was required to maintain a Top Secret security clearance, which required him to pass background checks in 2005, 2010, and 2016. According to the indictment, during routine security clearance renewals, Guertin impermissibly concealed the following information: the fact that he sent the details of certain visa applicants to his personal email so that he could make romantic overtures towards the applicants, Appendix ("A.") 13-17; a $225,000 loan agreement with a Chinese couple collateralized by his house, A. 14-18, 128; and significant gambling debts that he incurred during his employment, A. 14-17.

The principal claim in the indictment is that "the purpose of [Guertin's] scheme" of untruths was to defraud the State Department and "unlawfully enrich himself by maintaining his State Department employment and salary despite engaging in conduct that would jeopardize his suitability for a security clearance and a position of trust as a Foreign Service Officer." A. 15.

**B. Procedural History**

On October 15, 2021, Guertin moved to suppress certain evidence obtained pursuant to a search warrant issued in this case and requested a *Franks* hearing to determine whether the warrant affidavit still supported probable cause when shorn of the allegedly false statements Guertin identified. The District Court denied both the motion to suppress and the request for a *Franks* hearing.

On October 15, 2021, Guertin also moved to dismiss both counts of the indictment for failure to state an offense. The District Court granted Guertin's motion and dismissed both counts. It dismissed the section 1343 count because the wire fraud statute criminalizes schemes to obtain money or property, 18 U.S.C. § 1343, whereas Guertin's alleged scheme merely sought to maintain his State Department employment and salary. The District Court was of the view that:

> a scheme to "maintain" something is not synonymous with a scheme to "obtain" the same thing. The word "obtain" generally connotes affirmative action to secure something outside one's possession. *See Obtain*, *Black*'s *Law Dictionary* (11th ed. 2019) (defining the term as to "bring into one's own possession; to procure"). The word "maintain," by contrast, connotes action to preserve the status quo. *See Maintain*, *id.* (defining the term as "[t]o continue in possession of (property etc.)"). The upshot is that to state an offense under the plain meaning of § 1343, the Government must allege a defendant's scheme sought to gain possession of something not previously in his possession. And by extension, the Indictment's allegation that Guertin merely sought to "maintain" his salary does not suffice.

*Guertin*, 581 F. Supp. 3d at 92-93. Additionally, the District Court determined that applying the wire fraud statute to these facts would amount to an end-run around the Supreme Court precedent regarding honest services fraud. *Id.* at 94-96. Finally, the District Court dismissed the obstructing an official proceeding count on the ground that the security clearance background check was not an "official proceeding" under 18 U.S.C. § 1512(c)(2). *Id*. at 96-100.

The Government now appeals the dismissal of the wire fraud count, but not the dismissal of the obstructing an official proceeding count. Guertin cross-appeals the denial of his motion to suppress and his request for a *Franks* hearing.

## II.    ANALYSIS

### A.  Standard of Review

We review "*de novo* the district court's dismissal of an indictment based on questions of law." *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005). "In reviewing the district court's denial of the suppression motion, we review legal conclusions *de novo* and factual findings for clear error." *United States v. Miller*, 799 F.3d 1097, 1101 (D.C. Cir. 2015). We need not establish a standard of review with respect to the District Court's denial of Guertin's request for a *Franks* hearing because the result would be the same under either the clearly erroneous or *de novo* standard of review. *See United States v. Williams*, 827 F.3d 1134, 1146 (D.C. Cir. 2016).

**B. The Insufficiency of the Indictment Under 18 U.S.C. § 1343**

Under the wire fraud statute, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," causes a wire transmission in interstate or foreign commerce "for the purpose of executing such scheme or artifice" shall be subject to criminal penalties. 18 U.S.C. § 1343. The indictment of Guertin pursuant to 18 U.S.C. § 1343 cannot stand absent a plausible allegation that he pursued a deceptive scheme, facilitated by a wire transmission, to deprive his employer of money or property. *See Kelly*, 140 S. Ct. at 1571. The Supreme Court has made it clear that the statute does not criminalize all acts of dishonesty that are facilitated by wire transmission. *Id.* Rather, "[t]he wire fraud statute . . . prohibits *only* deceptive 'schemes to deprive [the victim of] money or property.'" *Id.* (emphasis added) (quoting *McNally*, 483 U.S. at 356). Thus, the Government must show not only that the accused engaged in deception, but that "an object of [his] fraud was property." *Id.* (cleaned up). Even if we assume that Guertin's untruths were part of a "scheme," the indictment here still fails because it does not plausibly allege that the purpose of Guertin's scheme was to deprive the State Department of "money or property," as required by section 1343 and Supreme Court case law construing the statute.

**1. Honest Services Fraud**

Historically, courts construed the federal fraud statutes to proscribe "schemes to defraud citizens of their intangible rights to honest and impartial government." *McNally v. United States*, 483 U.S. 350, 355 (1987). If a city official accepted a bribe from a third party in exchange for awarding that party a city

contract, this was seen as a breach of *honest service*. Even if "the contract terms were the same as any that could have been negotiated at arm's length" such that the city "suffer[ed] no tangible loss," courts historically reasoned that "actionable harm lay in the denial of [the city's] right to the offender's 'honest services.'" *Skilling*, 561 U.S. at 400.

However, in *McNally*, the Supreme Court "stopped the development of the intangible-rights doctrine in its tracks." *Id.* at 401.

> *McNally* involved a state officer who, in selecting Kentucky's insurance agent, arranged to procure a share of the agent's commissions via kickbacks paid to companies the official partially controlled. The prosecutor did not charge that, in the absence of the alleged scheme, the Commonwealth would have paid a lower premium or secured better insurance. Instead, the prosecutor maintained that the kickback scheme defrauded the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly.
>
> [The Supreme Court] held that the scheme did not qualify as mail fraud. Rather than construing the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, [the Court] read the statute as limited in scope to the protection of property rights.

*Skilling*, 561 U.S. at 401-02 (cleaned up). After *McNally*, Congress enacted 18 U.S.C. § 1346 to clarify that the phrase "scheme or artifice to defraud" includes schemes to deprive another of "the intangible right of honest services." However,

the Court cabined section 1346 to schemes involving bribes or kickbacks. *Id.* at 408-09. In other words, with the exception of schemes involving bribes or kickbacks, *McNally* and its progeny reject the use of federal fraud statutes to criminalize alleged schemes that merely deprive the victim of honesty as such. "The wire fraud statute thus prohibits only deceptive schemes to deprive the victim of money or property." *Kelly*, 140 S. Ct. at 1571 (cleaned up).

Here, the indictment does not plausibly allege that the object of Guertin's scheme was to deprive his employer of "money or property," as *Kelly* requires. The indictment alleges that Guertin's deceits aimed to maintain his security clearance. However, this is not tantamount to a scheme to deprive his employer of "money or property." Indeed, the Government has not contested Guertin's argument that "a security clearance is intangible property that does not qualify as 'money or property' within the meaning of 18 U.S.C. § 1343." A. 72; *see Cleveland v. United States*, 531 U.S. 12, 18 (2000) (no mail fraud where object of fraud was to obtain gambling license because license was not property in hands of the state); *United States v. Borrero*, 771 F.3d 973, 976 (7th Cir. 2014) (no mail fraud where object of fraud was to obtain car titles because car title was not property in hands of the state). The Government thus hinges its theory on the allegation that Guertin lied to "enrich himself by maintaining his State Department employment and salary." A. 15. Stripped to its core, the Government's theory is that whenever an employee lies about a specific, concrete condition of employment – here, Guertin's suitability for security clearance – the employer is defrauded of "money or property" by paying the employee's salary. We reject this theory.

Lower courts applying the principles of *McNally* and its progeny have limited the wire fraud statute "only to those

schemes in which a defendant lies about the nature of the bargain itself." *United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir. 2016); *see also United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) (drawing distinction "between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes"). This makes sense under *McNally*, *Skilling*, and *Kelly*. If an employee's untruths do not deprive the employer of the benefit of its bargain, the employer is not meaningfully defrauded of "money or property" when it pays the employee his or her salary. Rather, when the employer receives the benefit of its bargain, the employee's lie merely deprives the employer of honesty as such, which cannot serve as the predicate for a wire fraud conviction. *See United States v. Yates*, 16 F.4th 256, 267 (9th Cir. 2021) ("Permitting the government to recharacterize schemes to defraud an employer of one's honest services—thereby profiting through the receipt of salary and bonuses—as schemes to deprive the employer of a property interest in the employee's continued receipt of a salary would work an impermissible end-run around" *McNally* and its progeny. (cleaned up)).

Adopting the Government's theory would sweep a large swath of everyday workplace misconduct within the ambit of the federal fraud statutes. Consider an accountant who lies about her personal internet use during work hours, or a manager who conceals a forbidden relationship with a subordinate, or a social worker who conceals a DUI record. Limitations on internet use, prohibitions against managers and subordinates dating, and clean criminal record requirements are undoubtedly concrete and specific conditions of employment. Nevertheless, the employees' deceits in these scenarios do not

deprive their employers of "money or property" for purposes of the federal fraud statutes if there is no showing that an honest employee would have performed better or that the employer would have paid less for the dishonest employee's work. *See McNally*, 483 U.S. at 360 (no mail fraud for insurance kickback scheme because "[i]t was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance"); *United States v. Frost*, 125 F.3d 346, 361 (6th Cir. 1997) (no mail fraud when contractor concealed conflict of interest because "[t]here is no evidence in this case that NASA would have had to pay less money or would have received more services if Congo had disclosed his conflict of interest").

If there is no difference between the honest employee and dishonest employee in terms of performance or pay – that is, if the employer receives the benefit of its bargain – criminalizing the lies of a dishonest employee would create an intangible right to honest services in just the way *McNally* renounces. And because deceits of the sort described above are not uncommon in workplaces across the country, criminalizing them all would give federal prosecutors carte blanche to set the standards of disclosure and honesty in employment. Such an expansive interpretation of the wire fraud statute finds no support in the text of the provision or any Supreme Court precedent, and "would raise serious concerns about whether the offense is defined with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Yates*, 16 F.4th at 267-68 (cleaned up).

Here, as in *McNally* and *Frost*, the indictment does not claim that in the absence of Guertin's deceits, the State Department would have received better work from or paid a different salary to an honest employee. *See, e.g.*, *Frost*, 125

F.3d at 361 (quoting *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994) ("To convict, the government had to establish that the omission caused . . . actual harm . . . of a pecuniary nature or that the [victim] could have negotiated a better deal for itself if it had not been deceived.")). To the contrary, the record reveals that Guertin received glowing performance reviews during his tenure with the State Department. Supplemental Appendix 257-65.

As explained above, the mere allegation that a high security clearance was a condition of Guertin's employment is insufficient to support the indictment under section 1343. Employers typically have great discretion in establishing conditions of employment, as they see fit. However, in light of the Supreme Court's pronouncements, it surely cannot be said that an employee's breach of any important condition of employment that is facilitated by wire transmission is tantamount to a "scheme" to defraud the employer of "money or property" in violation of section 1343. This is not the law. That Guertin lied about his suitability for his security clearance "do[es] no more than cause" the State Department to engage in "transactions [it] would otherwise avoid[,] which do[es] not violate the mail or wire fraud statutes." *Shellef*, 507 F.3d at 108. Without some plausible allegation claiming that the State Department did not receive the benefit of the core employment bargain, the indictment fails to allege a scheme to deprive the State Department of "money or property." Therefore, the indictment cannot be sustained under 18 U.S.C. § 1343.

## 2. Salary Maintenance Fraud

The District Court, relying on the Ninth Circuit's decision in *Yates*, reasoned that because the wire fraud statute requires the object of the scheme be to "obtain[]" money or property, 18 U.S.C. § 1343, the allegation that Guertin lied to "maintain" his

employment and salary cannot sustain a wire fraud conviction. *See* A. 134-36. In *Yates*, the Ninth Circuit distinguished between "a scheme whose object is to obtain a new or higher salary" – which can sustain a federal fraud conviction – and "a scheme whose object is to deceive an employer while continuing to draw an existing salary" – which cannot sustain a federal fraud conviction. 16 F.4th at 266. According to the *Yates* court, criminalizing a lie to "maintain" an existing job and salary, as opposed to a lie to "obtain" a new job and salary, would "let in through the back door the [honest services] theory that [the Supreme Court] tossed out the front." *Id.* at 267 (internal quotation marks omitted).

We need not adopt the Ninth Circuit's approach to affirm the District Court in this case. We also prefer to leave this matter for another day, because it is not clear that salary maintenance fraud and honest services fraud are always coextensive. This distinction is not presented here, so there is no reason for us to overreach in our holding when this case so clearly involves a situation of alleged honest services fraud. Regardless of whether Guertin lied to "obtain" future salary or "maintain" his existing salary, we affirm the District Court's dismissal because the indictment fails to allege that the State Department was deprived of something more than Guertin's honesty.

### 3. Employers Are Not Without Recourse to Address Honest Services Fraud

As noted above, the Supreme Court has made it clear that section 1343 is not intended to criminalize all acts of dishonesty and other misconduct that are facilitated by wire transmission. However, the unavailability of criminal prosecution under the wire fraud statute certainly does not leave employers without recourse. Employees who engage in

such misdeeds may still be met with adverse employment consequences, including termination, and even the possibility of civil litigation. And, as noted above, 18 U.S.C. § 1346 permits the Government to prosecute honest services fraud when it is part of a scheme involving bribes or kickbacks.

Furthermore, the record in this case indicates that when Guertin commenced his background investigation, he completed a Standard Form 86 ("SF-86") questionnaire. This is a requirement for any current or prospective Government employee who is seeking a security clearance. The SF-86 informs the person filling out the form that misrepresentations may be prosecuted under 18 U.S.C. § 1001, which prohibits making false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch." Although Guertin answered "no" to three background questions on his 2016 SF-86 that led to his indictment under section 1343, he was never charged under section 1001. The Government may have had good reasons not to pursue a charge against Guertin under section 1001, and we offer no judgment on this. However, the Government may not now stretch 18 U.S.C. § 1343 to cover any gap left by its decision not to take action under 18 U.S.C. § 1001.

The simple point here is that the wire fraud statute, as interpreted through the lens of Supreme Court precedent, does not support an indictment on the facts proffered by the Government in this case.

## C. Denial of Motion to Suppress and *Franks* Hearing

Finally, because we affirm the dismissal of the indictment, Guertin is the prevailing party in this case. As such, he has no right to seek review of the District Court's denial of his motion to suppress and request for a *Franks* hearing.

In rare circumstances, an "appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 334 (1980); *see also Camreta v. Greene*, 563 U.S. 692, 702-03 (2011). In these cases, however, the adverse collateral ruling affected the prevailing parties' prospective conduct, *id.*, whereas a denial of Guertin's *Franks* hearing and motion to suppress does not have any prospective effect on him. Thus, we adhere to the default rule that "'[a] party may not appeal from a judgment or decree in his favor.'" *Zukerman v. USPS*, -- F.4th --, 2023 WL 2939950, at *9 (D.C. Cir. 2023) (quoting *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939)).

### D. CONCLUSION

For the reasons set forth above, we affirm the District Court's dismissal of the indictment. We dismiss Guertin's cross-appeal of the District Court's denial of his motion to suppress and request for a *Franks* hearing.

*So ordered.*