# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 9, 2024                    Decided July 19, 2024

No. 21-3081

UNITED STATES OF AMERICA,
APPELLEE

v.

CHANCE BARROW,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00127-1)

---

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Timothy R. Cahill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Elizabeth Aloi*, Assistant U.S. Attorneys.

Before: HENDERSON, MILLETT and CHILDS, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: After a seven-day trial, a jury convicted Appellant Chance Barrow ("Barrow") of two counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of concealment of material facts in violation of 18 U.S.C. § 1001(a)(1). In turn, the district court sentenced Barrow to seventeen months of imprisonment and ordered him to pay $77,057.00 in restitution. On appeal, Barrow seeks reversal of his convictions and the order of restitution on the basis that there was insufficient evidence to support the convictions, and that the district court erred in its evidentiary findings, case-management rulings, jury instructions on concealment, and award of restitution. After careful consideration of the record, we vacate Barrow's wire fraud convictions and the district court's restitution order, reverse Barrow's conviction for concealment of material facts, and remand the concealment charge for further proceedings consistent with this opinion.

**I.**

In 2016, the Army Criminal Investigation Division ("Army-CID") employed Barrow as a digital forensic examiner in Army-CID's Pacific Fraud Field Office in Irvine, California. By 2018, Barrow was a special agent responsible for running his own investigations. In March 2018, Barrow's now ex-wife filed a report against Barrow with the Naval Criminal Investigative Service ("NCIS") alleging sexual assault. When Army-CID learned of NCIS's criminal investigation, Army-CID placed Barrow on administrative duty—a status where the employee loses his badge, credentials, and weapon and is unable to conduct investigations. After receiving the NCIS's investigative report in April 2018, Army-CID officials met with Barrow and conveyed to him that he "no longer had a future with our agency and it did not look good for him." J.A.

1889:20–21. That meeting followed these officials' prior meeting with Frank Robey—the official with ultimate authority to fire or retain Barrow—who had told them "it's probably better off if [Barrow] resigns" but had not explicitly said he would fire Barrow if he did not resign. J.A. 1902–1903. Approximately thirty minutes later, Barrow submitted his resignation.

In May 2018, Barrow applied for a position in Maryland as a criminal investigator or special agent with the Treasury Inspector General for Tax Administration ("TIGTA"). To complete the TIGTA application, Barrow answered a series of questions regarding his suitability for employment. When asked if he is a "current federal employee," Barrow stated that he was not a current federal employee, J.A. 1095 #3; when asked what agency and organization currently employed him, Barrow answered "not applicable," J.A. 1095 #5; when asked additional information about his current agency of employment, Barrow stated that he was currently employed by "Department of Defense - United States Army Criminal Investigations Command," J.A. 1095 #6; when asked "[i]f you are a current Federal employee, what is your duty station," Barrow stated his duty station was Irvine, California, J.A. 1095 #7; and when asked "[i]f you are a Federal employee, under what type of appointment are you currently serving," Barrow stated that he was serving an appointment as a "career or career-conditional appointment in the competitive service," J.A. 1095 #8. Barrow submitted additional documentation to support his application package including his resume which stated he possessed an active Top Security Clearance; an outdated Standard Form ("SF") 50: Notification of Personnel Action; a SF-15: Application for 10-Point Veteran Preference in which he identified his current employment as a criminal investigator; and a Treasury Department Bureau of Fiscal Services Optional Form, where he answered "no" when asked

if, "[d]uring the last 5 years," he had ever "been fired from any job for any reason," "quit after being told that [he] would be fired," left "any job by mutual agreement because of specific problems" or "debarred from Federal employment." J.A. 1120.

Based on the information Barrow provided, a TIGTA employee conducted a pre-employment screening telephone interview with Barrow. Barrow told the interviewer that he was not currently a federal employee and that he was not leaving current employment because of allegations of misconduct or other unfavorable circumstance. Since he had passed a full background check within five years of his TIGTA application, Barrow was asked to complete a SF-86C by updating answers to questions from his last SF-86: Questionnaire for National Security Positions. Significantly, Barrow failed to provide a reason for departing Army-CID, to include whether he was "[f]ired," "[q]uit . . . after being told you would be fired," "left . . . by mutual agreement following charges or allegations of misconduct"; provided as a reference Kirk Ellis, who was not Barrow's supervisor at the time he resigned from Army-CID and was his close friend and confidante; and reported no changes to whether he had ever had his National Security Clearance "denied, suspended, or revoked" or if there had been any changes to his investigations and clearance record. J.A. 1126–J.A. 1127, J.A. 1166, J.A. 1184. TIGTA hired Barrow as a criminal investigator with a start date of October 1, 2018.

TIGTA received notice of the new domestic violence allegations against Barrow on July 24, 2019. On August 1, 2019, TIGTA initiated a criminal investigation and reassigned Barrow to administrative duties. Thereafter, TIGTA placed Barrow on paid administrative leave on September 11, 2019, indefinite suspension without pay on April 22, 2020, and officially terminated him on July 17, 2021.

On July 22, 2020, a federal grand jury indicted Barrow on two counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of concealment of material facts in violation of 18 U.S.C. § 1001(a)(1). At trial in June 2021, the district court made several evidentiary rulings related to the NCIS investigation of Barrow and his job performance at TIGTA. The district court prohibited disclosure of the details of the NCIS investigation of Barrow to the jury, concluding that the only relevance the investigation had to the case was that Barrow was under investigation at the time of his application to TIGTA. Further, the district court prevented Barrow from rebutting the inference that he moved to Maryland to evade the NCIS investigation. The district court noted that evidence of Barrow's inquiry into other jobs prior to the NCIS investigation did not "provide meaningful evidence of Barrow's state of mind at the time he resigned from Army-CID and moved from California to Maryland." Appellee's Br. 44–45. The district court further excluded evidence from witness Scott Moffit regarding Barrow's job performance while working at TIGTA, finding that Barrow's job performance was not an issue. Additionally, the district court prohibited introduction of evidence relating to advice Barrow requested on whether he should disclose the NCIS investigation, finding that this evidence went to the merits of the NCIS investigation, which had been excluded by the court. On June 24, 2021, the jury found Barrow guilty on both wire fraud counts and the concealment count. The district court sentenced Barrow to seventeen months of imprisonment and ordered him to pay $77,057.00 in restitution.

Barrow timely appealed.

## II.

We have jurisdiction to review Barrow's appeal of his

judgment of conviction as a final order under 28 U.S.C. § 1291.

**A.**

Before turning to the merits, we first address whether Barrow preserved his sufficiency challenge to the wire fraud convictions, as it dictates which standard of review to apply: *de novo* or plain error. If Barrow properly preserved the issue, we review questions of law *de novo*.[1] *United States v. Boyd*, 803 F.3d 690, 692 (D.C. Cir. 2015) ("We review a challenge to the sufficiency of the evidence *de novo*.") (emphasis added). Conversely, if Barrow failed to preserve the issue, plain error review applies.[2] *United States v. Bostick*, 791 F.3d 127, 142 (D.C. Cir. 2015) ("Because Johnson did not raise that argument in the District Court, our review is for plain error.").

> To preserve a claim of error on appeal, a party typically must raise the issue before the trial court. No procedural principle is more familiar than that a right may be forfeited in a criminal case by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.

---

[1] "*De novo* review means that the reviewing court 'do[es] not defer to the lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below.'" *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (citation omitted) (emphasis added). *See also Burke v. Gold*, 286 F.3d 513, 526 (D.C. Cir. 2002) (Randolph, J., dissenting) ("*De novo* review means that the district court's opinion (if it rendered one) drops out.").

[2] "Plain error review means that we will reverse only if there was an error, that was plain, that affected the defendant's substantial rights, and that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Presbitero*, 569 F.3d 691, 698 (7th Cir. 2009) (citation omitted).

*Salazar ex rel. Salazar v. Dist. of Columbia*, 602 F.3d 431, 436 (D.C. Cir. 2010) (cleaned up).

Barrow argues that *de novo* review is applicable because he "'preserve[d] the full range of challenges' to the sufficiency of the evidence." Reply Br. 6 (citing, *e.g.*, *United States v. Milton*, 8 F.3d 39, 45 (D.C. Cir. 1993) (according to Barrow, a "general claim of insufficient evidence preserved defense that was never raised or argued to the court or jury in any form below")). The government disagrees asserting that plain error review is applicable because Barrow "moved for judgment of acquittal on the wire-fraud counts based on specific evidentiary grounds, but he did not assert that the government failed to prove he had schemed to deprive TIGTA of 'money or property.'" Appellee's Br. 18 (citing J.A. 2492–J.A. 2493).

Generally, if a defendant raises specific objections to the sufficiency of the evidence at trial, his claim is subject to plain error review if he raises a different objection on appeal. *See United States v. Spinner*, 152 F.3d 950, 955 (D.C. Cir. 1998) ("However, we review an appellant's sufficiency-of-the-evidence challenge for plain error when a motion for judgment of acquittal was based on specific (and different) grounds." (citing *United States v. Sayan*, 968 F.2d 55, 62 (D.C. Cir. 1992))); *Bostick*, 791 F.3d at 142 ("Because Johnson did not raise that argument in the District Court, our review is for plain error."). However, even if we find plain error applicable, the "fail[ure] to present any evidence on an essential element of a crime . . . would warrant reversal under either [the sufficiency or plain error] standard[s]." *Spinner*, 152 F.3d at 956; *see id.* ("express[ing] uncertainty as to how a plain error review of a sufficiency-of-the-evidence argument might differ from the standard of review we apply when the argument has been preserved" because the standard for preserved sufficiency standards is already "highly differential") (quotations omitted).

We need not decide whether plain error or *de novo* review applies to Barrow's record-based sufficiency challenge, since our analysis would be the same under either standard.

**B.**

As to the merits, Barrow asserts that the government's evidence was insufficient to support wire fraud convictions because it did not show a scheme "to defraud TIGTA of 'money or property' as those terms are used in § 1343." Appellant's Br. 39. "When reviewing a conviction for sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gaskins*, 690 F.3d 569, 577 (D.C. Cir. 2012) (citation omitted). "In making that determination, 'the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact.'" *Id.* (citation omitted).

The wire fraud statute makes it a criminal offense for a person to "devise[] or intend[] to devise any scheme or artifice to defraud, or [to] obtain[] money or property by means of false or fraudulent pretenses, representations, or promises, transmit[] or cause[] to be transmitted by means of wire . . . communication in interstate or foreign commerce." 18 U.S.C. § 1343. "The elements of wire fraud are (1) formation of a 'scheme to defraud,' [to get money or property,] and (2) use of interstate wire communication to further that scheme." *United States v. Lemire*, 720 F.2d 1327, 1334–35 (D.C. Cir. 1983). For Barrow's wire fraud offenses, the government charged that Barrow devised "a scheme to defraud" for the "purpose" of

obtaining "paid employment with TIGTA" using "materially false and fraudulent representations regarding his employment history." J.A. 33. We find that the evidence was insufficient to allow the jury to conclude that Barrow was guilty of wire fraud as charged beyond a reasonable doubt.

Recently, in *United States v. Guertin*, 67 F.4th 445 (D.C. Cir. 2023), this court defined how a scheme to defraud money or property is demonstrated for an employee trying to maintain his employment and salary.[3] Specifically, the court held that

---

[3] *Guertin* was decided May 16, 2023, and Barrow was convicted June 24, 2021. This gap in time is of no effect because the Supreme Court and the D.C. Circuit have recognized the general rule that an appellate court must apply the law in effect at the time it renders its decision. *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969); *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 363 (D.C. Cir. 2018). "[J]udicial decisions presumptively apply retroactively to all cases still open on direct review and all events, regardless of whether such events predate or postdate the new rule." *Child.'s Hosp. Ass'n of Tex. v. Azar*, 507 F. Supp. 3d 249, 253 (D.D.C. 2020) (citing *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993)). This longstanding approach ensures that judgments reflect the current legal standards, even if it means setting aside a ruling that was correct at the time it was rendered. *Henderson v. United States*, 568 U.S. 266, 271 (2013) (citing *United States v. Schooner Peggy*, 5 U.S. 103 (1801)). Moreover, we do not believe our consideration of *Guertin* runs afoul of *United States v. Reynoso*, 38 F.4th 1083 (D.C. Cir. 2022), where the court held that "a defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law." *Id.* at 1091. Unlike in *Reynoso*—which addressed a new knowledge-of-felon status

10

"[i]f an employee's untruths do not deprive the employer of the benefit of its bargain, the employer is not meaningfully defrauded of 'money or property' when it pays the employee his . . . salary." *Id.* at 451. Further, the court drew the distinction that "when the employer receives the benefit of its bargain, the employee's lie merely deprives the employer of honesty . . . which cannot serve as the predicate for wire fraud." *Id.*

---

element decreed by the Supreme Court in *Rehaif v. United States*, 588 U.S. 225 (2019) when issued on the same day as Reynoso's sentencing—*Guertin* does not recognize or create new elements the government needs to prove for a wire fraud conviction. Instead, in *Guertin*, our court identified already existing aspects of wire fraud previously elaborated on by the Supreme Court and other appellate courts. *See McNally v. United States*, 483 U.S. 350, 360 (1987); *Skilling v. United States*, 561 U.S. 358, 400 (2010); *Kelly v. United States*, 590 U.S. 391, 398 (2020) (object of scheme must be money or property); *United States v. Takhalov*, 827 F.3d 1307, 1313 (11th Cir. 2016) (A scheme to defraud requires a lie "about the nature of the bargain itself."); *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) (A scheme that only causes a victim "to enter into transactions they would otherwise avoid" is not wire fraud). We further note that any concerns regarding *Reynoso*'s applicability or whether Barrow's *Guertin* argument should have been formulated as a claim of trial error rather than sufficiency of the evidence challenge are alleviated by the government's failure to either cite to *Reynoso* or raise related concerns regarding *Guertin* in its briefing, thus forfeiting the arguments. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief." (citation omitted)).

In *Guertin*, the government brought wire fraud charges against a former Foreign Service Officer in the State Department who "adjudicated Chinese visa applications to the United States." *Id.* at 447. Guertin's indictment charged him with violating the wire fraud statute by failing "to disclose 'a sexual relationship with a foreign national whose visa application he had adjudicated; certain financial problems arising out of gambling activity; and an undisclosed loan agreement with two Chinese nationals collateralized by Guertin's home.'" *Id.* The government alleged that these lies deprived it of the benefit of the bargain because suitability for security clearance was a condition of the job. *Id.* at 452.

This court held that the lies alleged were insufficient to sustain a wire fraud conviction. *Id.* The court observed that it is "not the law" "that an employee's breach of any important condition of employment that is facilitated by wire fraud is tantamount to a 'scheme' to defraud the employer of 'money or property.'" *Id.* Thus, in *Guertin*, the government was unable to satisfy the indictment's purposes under the wire fraud statute because there was neither a plausible allegation nor evidence showing that the employer did not receive the benefit of the bargain or was subject to a scheme to deprive it of money or property. *Id.* Viewing wire fraud allegations in the employment context through the lens of *Guertin*, if an employee's "untruths do not deprive the employer of the benefit of the bargain," paying a salary does not defraud the employer. *Id.* at 451.

The wire fraud theory charged and proved against Barrow—that his lies enabled him to receive salary payments he otherwise would not have received—is materially identical to that charged in *Guertin*. *Compare* Indictment, J.A. 33 ¶ 11 ("The purpose of the scheme was for [Barrow] to obtain paid employment with TIGTA by making materially false and

fraudulent representations regarding his employment history to hide the circumstances of his resignation from Army-CID in the midst of serious allegations of misconduct."), *with Guertin*, 67 F.4th at 448 ("The princip[le] claim in the indictment is that 'the purpose of [Guertin's] scheme' of untruths was to defraud the State Department and 'unlawfully enrich himself by maintaining his State Department employment and salary despite engaging in conduct that would jeopardize his suitability for a security clearance and a position of trust as a Foreign Service Officer.'").

On appeal, the government for the first time asserts that Barrow's fraud deprived TIGTA of an honest criminal investigator thereby depriving it of the benefit of the bargain. To that end, the government highlights scattered pieces of evidence that supposedly show that dishonesty from an investigator *would* deprive it of the benefit of the employment bargain.[4] That, however, is not the case the government indicted or tried. The district court, in fact, repeatedly emphasized that Barrow's "work performance is not at issue." J.A. 2538:3–9; *see* J.A. 2538:15–17 (government arguing that Barrow's job performance is "not relevant" because "[t]he intent to defraud is getting the job that he would not otherwise

---

[4] At trial, the government presented testimony from Chanda Jones, TIGTA's personnel security specialist, who testified that TIGTA investigators are "held to a higher [standard of] integrity." J.A. 2385. Ray Park, an Army-CID special agent, testified that an investigator under investigation for criminal conduct could negatively impact the cases he is working on to include having them "thrown out in court." J.A. 1931–J.A. 1932. In addition, the government points out that "Barrow's Army-CID supervisors testified that, for this reason, Barrow was removed from all active investigative work and prohibited from even 'touch[ing] any case files' as soon as they learned about the NCIS investigation." Appellee's Br. 23–24 (citation omitted).

have gotten"); J.A. 2539:4–12 (court rejecting Barrow's "argument that doing a good job means that [Barrow] would not have any intent to defraud" as speaking "to something that's not at issue," since the relevant "intent to defraud" involved intent to obtain a job Barrow would not have otherwise obtained). The district court acknowledged, in any event, evidence that Barrow performed his job well. *See* J.A. 949 ("[T]here is no evidence in this case that Mr. Barrow did not intend to perform investigative services, and in fact, he had a 'successful' rating on his performance review[.]"); J.A. 951 ("Defendant's performance review indicates that Mr. Barrow 'took the initiative'" by taking on various new tasks even when assigned to administrative duties). None of the evidence, instructions, or arguments focused on whether Barrow's lies deprived the government of the benefit of its employment bargain by denying it of an officer with the desired level of honesty now belatedly claimed. It is simply too late for the government to try and repackage its prosecution now. The Supreme Court has made clear that we may not "cherry-pick facts presented to a jury charged on [an incorrect wire fraud] theory and apply them to the elements of a different wire fraud theory in the first instance." *Ciminelli v. United States,* 596 U.S. 306, 316–17 (2023). To do as the government asks would require this court "to assume not only the function of a court of first view, but also of a jury" which is "not [its] role." *Id.*; *see also McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.").

For those reasons, we reject the government's theory in accordance with *Guertin*. We find that after viewing the evidence in the light most favorable to the government, a rational trier of fact could not conclude that TIGTA failed to receive the benefit of its bargain with Barrow. Because Barrow

14

did not defraud TIGTA of money or property, the evidence presented was insufficient to support his conviction on two counts of wire fraud. We vacate Barrow's convictions for wire fraud and remand to the district court with instructions to enter a judgment of acquittal.[5]

## C.

As to his concealment conviction, Barrow takes issue with the district court's evidentiary rulings, trial management decisions, and instructions to the jury, alleging abuse of discretion and contending that the district court's errors "undercut his attempts to establish reasonable doubt as to intent and misled [the jury] concerning his duty to disclose." Appellant's Br. 32.

18 U.S.C. § 1001(a)(1) criminalizes the falsification, concealment, or covering up of a material fact from the

---

[5] We are not suggesting by this finding that employers are without recourse when an employee is found to be dishonest or to have lied on an application. Employers can still discipline employees they find to be dishonest, but that dishonesty does not mean they should also be charged with a criminal offense when the government fails to prove those lies caused actual money or property loss to the government. In addition, given the facts of this case, we need not here decide when, if ever, lies about job qualifications would go to "the benefit of the core employment bargain." *Guertin*, 67 F.4th at 452. If, for instance, an employer posts a job opening specifically intended for veterans, an applicant who lied about veteran status might be said to have deprived the employer of one important part of what the employer was paying for—even if the applicant intends to and does perform the job. But because the government indicted and tried Barrow on a theory that is on all fours with that in *Guertin*, we need not address other scenarios where the benefit sought by the government might differ in form of character.

government. The elements of a concealment of material fact offense are:

> (1) the defendant must make a statement, or have a duty to disclose the information; (2) the statement must be false, or there must be acts amounting to concealment; (3) the statement or concealed facts must be material; (4) the person must make the statement or conceal the facts knowingly and willfully; and (5) the statement or concealed information must concern a matter within the jurisdiction of a federal department or agency.

*United States v. Moore*, 446 F.3d 671, 677 (7th Cir. 2006). In Barrow's indictment, the government asserted that Barrow willfully concealed or failed to reveal his resignation from Army-CID, how it occurred before his possible termination, and the allegations of misconduct leading to the NCIS criminal investigation in completing the TIGTA employment application. We vacate and remand finding that the exclusion of evidence rebutting the materiality of the facts allegedly concealed by Barrow constitutes reversible error. *See United States v. Akers*, 702 F.2d 1145, 1149 (D.C. Cir. 1983) (reviewing the district court's decision to exclude evidence for abuse of discretion).

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Whitmore*, 359 F.3d 609, 615–16 (D.C. Cir. 2004). "The question is whether th[e] evidence affected substantial rights, for '[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.'" *United States v. Wilson*, 605 F.3d 985, 1024 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 52(a)). "In evaluating whether th[ere] was harmless error, we ask 'what

effect the error had or reasonably may be taken to have had upon the jury's decision.'" *Id.* (citation omitted). "Specifically, we must determine whether 'the error had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citation omitted). "An error is harmless if the guilty verdict was 'surely unattributable to the error.'" *Id.* (citation omitted).

The district court's exclusion of the evidence rebutting the materiality of the facts allegedly concealed constitutes reversible error. As relevant here, the district court prohibited Barrow from presenting testimony that he told the TIGTA interview panel that he had left Army-CID.

Because the government had to show Barrow's intent to deceive the TIGTA, intent is a material issue for the jury to decide. Barrow argues that because he was not allowed to present his evidence, the district court undercut his ability to rebut his intent to conceal material facts and establish reasonable doubt with the jury. We agree. Testimony that Barrow candidly informed TIGTA in his interview that he had already left his prior government employment directly undermined the government's theory that Barrow meant for his resume and various online answers to deceive the government about his employment status. The government, in fact, "acknowledges that the district court erred by excluding" this testimony. Appellee Br. 35. The government nonetheless argues this error was harmless because the relevant facts Barrow was charged with concealing had to do with the circumstances of his resignation, rather than the resignation itself. Appellee Br. 35–36.

We cannot say, on this record, that "the guilty verdict was 'surely unattributable to the error.'" *Wilson*, 605 F.3d at 1024 (quoting *United States v. Baugham*, 449 F.3d 167, 176 (D.C.

Cir. 2006)). The exculpatory evidence undercut a critical part of the government's case, and its exclusion left Barrow to defend with one arm tied behind his back. At closing, the government focused at length on how Barrow "la[id] the groundwork for his scheme to hide the truth early on in TIGTA's application process." J.A. 2832:16–18. The government called Barrow's resume—which listed him as still employed by Army-CID—"a lie," and argued at length that the error could not have been unintentional. J.A. 2832–J.A. 2833. The government further argued that Barrow's "lie in his resume help[ed] him through the next phase," which included further "lie[s]" on forms regarding his employment status. J.A. 2833–J.A. 2835. In addition, one of the things the indictment specifically charged Barrow with concealing from TIGTA was "that he had previously resigned from a position with Army-CID prior to Army-CID's proposed termination of Barrow[.]" J.A. 39 ¶ 25. Given the nature of the allegation and the government's argument, there is relevant doubt as to whether precluding Barrow from presenting evidence that he expressly informed his TIGTA interviewers that he was no longer employed influenced the verdict against him.

The district court excluded relevant testimony that should not have been excluded under Federal Rule of Evidence 402. As a result, we reverse Barrow's concealment conviction and remand for further proceedings consistent with this opinion.

## D.

Barrow posits that if the evidence is insufficient to support wire fraud convictions, we must vacate the district court's restitution order. Appellant's Br. 68.

"The purpose of the [Mandatory Victim Restitution Act] is 'essentially compensatory: to restore a victim, to the extent money can do so, to the position [the victim] occupied before

sustaining injury.'" *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (citation omitted). Because we vacate all three of Barrow's convictions, there is no longer an injury to the government to "restore." Therefore, we vacate the restitution order of $77,057.00.

\*\*\*\*\*

For the foregoing reasons, we (1) vacate Chance Barrow's two convictions for wire fraud and remand for entry of a judgment of acquittal; (2) reverse Barrow's conviction for concealment of material facts and remand for further proceedings consistent with this opinion; and (3) vacate the district court's restitution order.

*So ordered.*