# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 7, 2025        Decided July 22, 2025

No. 23-3226

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTHONY GLOVER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00204-1)

*Isra Bhatty*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Timothy R. Cahill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Matthew M. Graves*, U.S. Attorney, at the time the brief was filed, and *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant U.S. Attorneys.

Before: PILLARD, RAO and CHILDS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Anthony Glover, Defendant-Appellant, appeals the district court's denial of a motion to suppress evidence supporting his conviction, which he contends was obtained through an unlawful search of DaKnea Brewer's apartment. The district court concluded that the search was lawful because Brewer gave voluntary consent, finding that the police officer asking to search the apartment relayed his request in a polite and friendly manner and that Brewer's gestures and responses indicated that she agreed to the search. The district court did not sufficiently consider, however, whether statements by the police officer alluding to arrest warrants for her brothers rendered Brewer's assent to the officer's request mere acquiescence to a claim of lawful authority to conduct a search. We vacate the district court's order and remand for further proceedings.

**I.**

**A.**

On September 16, 2020, Metropolitan Police Department (MPD) officers went to the home of DaKnea Brewer looking for her two brothers, pursuant to an arrest warrant. At around 6:30 a.m., Brewer responded to knocks on her door by Officer Eldrick Creamer. Officer Creamer said that he needed to talk to her about something "important" concerning her brothers, noting that he did not want to talk out in the hallway where everyone could hear the conversation. J.A. 166. Brewer said "uh-huh." *Id.* Officer Creamer then asked, "I hope you don't mind, may I please come in?" *Id.* Brewer opened the door

fully, and Officer Creamer entered Brewer's apartment, apologizing for waking her up. Additional officers followed Officer Creamer into the apartment. Once inside, Officer Creamer asked whether Brewer's brothers were in the apartment and whether they lived in the apartment. Brewer said no. Officer Creamer stated that he and the other officers had been sent "looking for [Brewer's] brothers." J.A. 168. He also asked if there was anyone else in the apartment, and Brewer replied that there were other people in the apartment, but not her brothers.

Officer Creamer then stated: "Okay, well listen, I have got warrants." *Id*. Brewer responded, "That is fine, my brother is not here though." *Id*. Officer Creamer replied that what he "need[ed] to do, without touching any of [Brewer's] stuff, without disrupting [her] house," was that he "need[ed] to visually see" whether Brewer's brothers were in her apartment, "check them off" and then he would be "gone." *Id.* Brewer then said, "All right, that is fine." *Id*. As she walked down a hallway turning on the lights, she waved her hand forward and remarked "you all can . . . ." J.A. 169. An MPD officer then entered a bedroom, where he saw Glover sleeping and a firearm near him. The officers arrested Glover.

**B.**

Glover was charged with unlawful possession of a firearm by a person convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Glover filed a motion to suppress evidence under the Fourth Amendment, arguing that the firearm was found through an unlawful search of Brewer's apartment.

The district court held a suppression hearing. Officer Creamer testified that the officers did not have a search warrant, and that he told Brewer he had "warrants" without

clarifying whether he had "a search warrant or an arrest warrant." J.A. 88. Officer Creamer further testified that he said to Brewer that he "needed to go through the apartment," but that he admittedly did not ask Brewer if he could search the apartment. J.A. 88–89. Neither did he inform Brewer that she could refuse to consent to the search. Brewer did not testify at the hearing.

On review of Officer Creamer's body-worn camera footage and his testimony, the district court found that the officers' interactions with Brewer were generally friendly and non-threatening, and that Brewer's words and gestures indicated that she assented to Officer Creamer's request to search the apartment. The district court further found that when Officer Creamer said, "I have got warrants," Brewer "seemed to understand that . . . he meant arrest warrants." J.A. 168. The district court then determined that the totality of the circumstances showed that Brewer voluntarily consented to the search and therefore denied Glover's motion to suppress the evidence.

Glover pleaded guilty, reserving his right to appeal the district court's denial of his motion to suppress. Glover then filed this appeal. We have jurisdiction to review the district court's judgment. 28 U.S.C. § 1291.

**II.**

On appeal of a district court's denial of a motion to suppress, "we review legal conclusions *de novo* and factual findings for clear error." *United States v. Guertin*, 67 F.4th 445, 449 (D.C. Cir. 2023) (quotations and citation omitted).[1]

---

[1] Glover contends that we should review the district court's factual findings *de novo*, principally because the facts are captured on body-

### III.

The Fourth Amendment generally prohibits warrantless entry and search of a person's home. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Evidence obtained through an unlawful search in most circumstances must be suppressed. *See United States v. Dawkins*, 17 F.3d 399, 407–08 (D.C. Cir. 1994). Generally, "voluntary consent of an individual possessing authority" over the person's home is an exception to the warrant requirement. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (citation omitted). Glover challenges the district court's finding that Brewer gave voluntary consent for the MPD officers to enter and then search her home. Glover contends that the evidence that he possessed a firearm must be suppressed as the fruit of a warrantless search.

### A.

We first consider Glover's argument that the district court erred in finding that Brewer gave voluntary consent to the officers' search of her apartment. Glover principally contends that Officer Creamer's statements that he had "warrants," as well as his statement that he "need[ed]" to search the

---

worn camera footage and are not in dispute, citing *United States v. Lewis*, 921 F.2d 1294, 1301 (D.C. Cir. 1990). Glover offers no reason that would justify departing from our well-settled standards of review for motions to suppress evidence. Even when presented with body-worn camera footage, we have reviewed a district court's findings of fact on a motion to suppress for clear error. *See United States v. Bryant*, 111 F.4th 105, 108 (D.C. Cir. 2024). Glover's reliance on *Lewis* is also misplaced. In *Lewis*, we reviewed *de novo* the district court's finding of voluntariness, because the district court ruled on consent as a matter of law, without making any of the requisite findings of fact. *Lewis*, 921 F.2d at 1301.

apartment, rendered whatever assent Brewer may have given to the search mere acquiescence to an officer's claim of lawful authority to conduct the search. According to Glover, the district court erred by failing to consider whether those references to legal authority to conduct a search rendered Brewer's assent to a search mere acquiescence rather than voluntary consent. We agree.

Discerning whether consent to a search is voluntary depends on "careful" consideration of the "totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *see also United States v. Wilson*, 605 F.3d 985, 1027 (D.C. Cir. 2010); *United States v. Hall*, 969 F.2d 1102, 1106 (D.C. Cir. 1992). "[T]he voluntariness inquiry turns not on whether a 'reasonable' person in the defendant's position would have felt compelled to consent to a police officer's request to search, but, rather, on whether" the person who agreed to the search "actually felt compelled to consent." *Hall*, 969 F.2d at 1106. A person cannot give voluntary consent, however, if she agrees to a search "only in submission to [an officer's] claim of lawful authority" to carry out the search. *Bustamonte*, 412 U.S. at 233.

*Bumper v. North Carolina*, 391 U.S. 543 (1968), provides the framework for distinguishing mere acquiescence to legal authority from voluntary consent to a search. In *Bumper*, four White law enforcement officers appeared at the house of a 66-year-old Black woman, Hattie Leath, in search of her grandson, Wayne Bumper. *Id.* at 546. One of the officers stated, "I have a search warrant to search your house." *Id.* Leath responded "Go ahead" and opened the door. *Id.* Inside the house, the officers found a rifle that was later introduced as evidence against Bumper in a criminal trial. *Id.* The prosecution argued that the search was lawful because Leath consented, not because a warrant authorized the search. *Id.* On appeal of

Bumper's unsuccessful motion to suppress, the Supreme Court described the question presented as "whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant." *Id.* at 548. *Bumper* held that Leath did not consent to the search, because "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search," and such a "situation is instinct with coercion—albeit colorably lawful coercion." *Id.* at 550.

In *Bustamonte*, the Supreme Court further clarified the standard for assessing voluntary consent to a search. There, a police officer stopped a car with a burned-out headlight and license plate light and asked the passenger if he could search the car's trunk, without claiming to have lawful authority to carry out the search. *Bustamonte*, 412 U.S. at 220. The defendant's challenge rested on the police officer's failure to inform the passenger that he could refuse the search, and the question before the Supreme Court was whether "the State must affirmatively prove that the subject of the search knew that he had a right to refuse consent." *Id.* at 229. *Bustamonte* held that "knowledge of a right to refuse is not a prerequisite of a voluntary consent." *Id.* at 234. Instead, to determine whether a person has given voluntary consent to a search, a court must analyze "all the circumstances" through a "careful sifting of the unique facts and circumstances of each case." *Id.* at 233.

*Bustamonte* did not overrule *Bumper*. *Bustamonte* favorably cited *Bumper* to stress that assent to a search "coerced by threats or force, or granted only in submission to a claim of lawful authority" is not voluntary consent. *Id.* More generally, *Bustamonte* reaffirmed that the Fourth Amendment requires that consent to a search "not be coerced, by explicit or implicit means, by implied threat or covert force," because "no

matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Id.* at 228. Since *Bustamonte*, the Supreme Court has underscored that the Government's burden to show voluntary consent to a search "is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983) (citations omitted).

Glover's appeal turns on the district court's application of *Bumper*. The district court stated that, in *Bumper*, "the critical fact . . . [was] the fact that the police sought consent by alluding to a warrant that did not exist," and reasoned that, because that fact "is not present here," *Bumper* was not "applicable." J.A. 169, 175. *Bumper* is, to be sure, frequently applied to situations where a person agrees to a search after officers misrepresent that they have a search warrant. *See, e.g., Hadley v. Williams*, 368 F.3d 747, 749 (7th Cir. 2004). But that is just one specific application of *Bumper*'s broader holding that consent is not voluntary when it is "granted only in submission to a claim of lawful authority." *Bustamonte*, 42 U.S. at 233 (citing *Bumper*, 391 U.S. at 548).

Contrary to the district court's interpretation, *Bumper*'s holding is not limited to situations in which a police officer misrepresents the existence of a warrant. Indeed, in *Bumper*, the police officers did have a warrant, although its validity had not been tested in court. *See Bumper*, 391 U.S. at 550 n. 15; *see also id.* at 562 (White, J., dissenting). The critical fact in *Bumper* was not that a law enforcement officer misrepresented that he had a warrant; it was that "a law enforcement officer claim[ed] authority to search a home under a warrant," and therefore "he announce[d] in effect that the occupant ha[d] no right to resist the search." *Bumper*, 391 U.S. at 550; *see also Orhorhaghe v. INS*, 38 F.3d 488, 501 (9th Cir. 1994)

("*Bumper* . . . stands for the proposition that a consent is ineffective if it follows an express or implied claim by the police that they can immediately proceed to make the search in any event." (quotations and citation omitted)). *Bumper* requires that courts consider if any claims of lawful authority—whether false, ambiguous, or true—vitiated voluntary consent.

While the district court properly read *Bustamonte* to call for assessing the totality of the circumstances, the court's misreading of *Bumper* tainted its assessment here that Brewer gave voluntary consent to the search. The district court determined that in the officers' interactions with Brewer there were "no threats, no force . . . no vulnerable victim . . . no subtly coercive questioning" and "no *false* claim of authority." J.A. 172–73 (emphasis added). Having found that Officer Creamer made no false claim of authority, the district court determined that *Bumper* was not applicable. That was legal error. The district court did not properly consider whether Officer Creamer's reference to warrants was a claim of lawful authority to carry out the search, which influenced Brewer's understanding of whether she could refuse the search.

The district court found that when Officer Creamer stated he had "warrants," he "was telling Brewer that there were outstanding arrest warrants for the brothers and that he was not asking to search the apartment." J.A. 175. Critically, however, the district court did not determine whether Officer Creamer's references to a warrant—even if understood to be for an arrest and not a search warrant—rendered Brewer's assent to a search mere acquiescence. In other words, the district court did not consider whether Officer Creamer's "invocation of a warrant was tantamount to a pronouncement that [Brewer] had no right to resist the search." *United States v. Griffith*, 867 F.3d 1265, 1280 (D.C. Cir. 2017) (quotations and citation omitted).

Nor did the district court consider whether Officer Creamer's statement that he "need[ed]" to search the apartment for Brewer's brothers in conjunction with his reference to warrants rendered Brewer's assent to the search mere acquiescence. J.A. 174. The district court observed that Officer Creamer's statement that he "need[ed]" to search for Brewer's brothers, "did not appear in context to be an assertion of authority he lacked, but rather a plea." J.A. 174–75. But it did not consider the compounded effect of Officer Creamer's statements that he had warrants and that he needed to search the apartment for Brewer's brothers on Brewer's ability to voluntarily consent to the search.

We leave it to the district court in the first instance to determine whether the facts presented indicate that Officer Creamer's reference to warrants, either alone or in conjunction with his statement that he needed to search for Brewer's brothers, rendered Brewer's assent to the search mere acquiescence. In similar contexts, sibling circuits have considered whether an officer's references to a warrant that did not cover the requested search were nevertheless understood by the recipient to assert lawful authority to conduct the search, therefore vitiating consent. *See, e.g.*, *United States v. Nafzger*, 965 F.2d 213, 217–18 (7th Cir. 1992) ("[A] dairy farmer with no criminal record[ ] could not be expected to distinguish between a search warrant of [a] truck and a search warrant for [a] truck."); *United States v. Medlin*, 842 F.2d 1194, 1198 (10th Cir. 1988) ("[A] layperson, under . . . extreme conditions . . . could hardly be expected to distinguish between that part of the search which was authorized by warrant, and for which his consent was unnecessary, and that part of the search which was unauthorized.").

\* \* \*

Accordingly, the district court failed to properly consider whether claims of lawful authority to conduct a search rendered Brewer's consent mere acquiescence, as required by *Bumper* and *Bustamonte*. Because the district court applied the wrong legal standard, and its "mistake of law infected its factual finding regarding consent," we "remand for further findings on that factual question." *United States v. Maragh*, 894 F.2d 415, 419 (D.C. Cir. 1990).

**B.**

Glover also argues that the district court erred in finding that Brewer voluntarily consented to the officers' entry into her home. The Government contends that Glover raises this challenge regarding consent to entry for the first time on appeal. We agree. Glover did not sufficiently raise his claim that evidence of the firearm was the fruit of the police officers' unlawful *entry* to Brewer's apartment. *See United States v. Williams*, 773 F.3d 98, 104 (D.C. Cir. 2014). In his briefing submitted to the district court, Glover challenged only whether Brewer gave consent "to search the apartment." J.A. 28. At the subsequent suppression hearing, defense counsel did not directly argue that Brewer failed to give voluntary consent to *entry*. Instead, defense counsel contended that Brewer did not give voluntary consent to *search*.

Assuming that we review Glover's unpreserved challenge to consent to entry for plain error, the district court made no error that was "clear or obvious." *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018). Glover contends that the officers' actions from the moment they arrived at Brewer's door "conveyed an unrelenting sense of urgency [and] necessity" that pressured Brewer into allowing the officers into her home. Def's Br. 19. The district court, however, found that when Officer Creamer and Brewer were speaking before

he entered the apartment, his "tone" was "friendly and polite and his weapon was not drawn." J.A. 166. The district court further found that Officer Creamer asked "may I please come in," and Brewer "opened the door" in response. J.A. 166–67. Based on the record, we see no plain error regarding the police officers' entry into the apartment.[2]

## IV.

For the foregoing reasons, we vacate the district court's denial of the motion to suppress. Because Glover's conviction turned entirely on evidence secured through the search of Brewer's home, we vacate his conviction. We remand to the district court for further proceedings consistent with this opinion.

*So ordered.*

---

[2] When requesting to enter the apartment, Officer Creamer did not reference or display any warrants, display his badge or his weapon, or otherwise make any claim of legal authority to enter the apartment.